UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT K. DECKER, | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
| vs. | )   Civil No. 3:23-cv-03063-GCS |
| | ) |
| DANIEL SPROUL, Warden, | ) |
| | ) |
|       Respondent. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Petitioner Robert Decker, a federal prisoner currently incarcerated at U.S. Penitentiary Marion ("USP Marion"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the loss of good conduct time based on discipline he received on April 5, 2023. (Doc. 1). The Respondent opposes the petition. (Doc. 14).[1] Based on the reasons delineated below, the Court finds that Decker's § 2241 petition lacks merit and denies the petition.

Decker is serving an aggregated 140-month term of imprisonment, followed by a three-year term of supervision, on one count of conspiracy to distribute a mixture of a detectable amount of hydromorphone, hydrocodone, and oxycodone under 21 U.S.C. §

---

[1] On March 7, 2024, the Court allowed Decker up to and including March 29, 2024, to file a reply brief. (Doc. 25). As of this date, Decker has not done so.

846, and one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Case No. 1:16-cr-20769-DMM, Doc. 68) (S.D. Fla. 2016).

At USP Marion, Decker is housed in the Communications Management Unit ("CMU"). CMU is general population housing that monitors inmate communications. Inmates are referred to the CMU if their offense conduct, or activity while incarcerated, demonstrates that heightened communication supervision is required to warrant the safe, secure, and orderly operation of prison facilities, or to protect the public. *See* Program Statement 5214.02 (2015); (Doc. 17; Doc. 14).

Decker lost good conduct time based on Incident Report 3739219, which charged him with violating Offense Code 296, "Mail Abuse, Disrupt Monitoring (Attempting)" and Offense Code 307, "Refusing to Obey an Order." (Doc. 1, p. 1, 5). The alleged offense was discovered after a review of Decker's outgoing letter on February 13, 2023, wherein Decker asked his daughter to relay messages to third-parties and individuals that were unapproved or blocked on his list. *Id.* at p. 7. Decker received three additional opportunities to edit the letter, but upon review of each revision, prison officials determined that Decker persisted in his attempts to include inappropriate messages in his correspondence. *Id.* The Discipline Hearing Officer ("DHO") held a hearing on March 28, 2023. *Id.* at p. 5. Decker was found guilty of violating Offense Code 296, resulting in the loss of 14 days of good conduct time ("GCT"). *Id.* at p. 8.[2]

---

[2] Decker claims he lost 27 days of GCT. However, the record reveals that it was 14 days.

On September 11, 2023, Decker filed his § 2241 petition to appeal the loss of his GCT. He questions the constitutionality of the DHO. Specifically, he alleges that he requested and was denied a memorandum that documented the decision to block his contact with Logan Decker, his son, Brenda Vargo, Logan's guardian, and Katherine Decker, his wife. Decker further alleges a violation of the Equal Protection Clause as an inmate can never restore the loss of GCT.

## FACTS

During the relevant time alleged in the petition, Decker was housed in USP Marion's CMU. On February 27, 2024, Intelligence Analyst O. Wyatt charged Decker with violating Offense Code 296, "Mail Abuse, Disrupt Monitoring (Attempting)" and Offense Code 307, "Refusing to Obey an Order" after she reviewed Decker's outgoing mail to his daughter Nicole Decker on February 13, 2023. (Doc. 1, p. 1, 5; Doc. 14-1, p. 3, 14-2, p. 2). Specifically, the description of the incident states:

> Inmate DECKER, ROBERT, #51719-074, is housed in the CMU, the CMU is established to house inmates, who due to their current offense of conviction, offense conduct, or other verified information, require increased monitoring of communications with persons in the community to protect the safety, security, and orderly operation of Bureau facilities, and protect the public. On February 13, 2023, at approximately 1:00 pm, I reviewed outgoing mail from inmate DECKER, ROBERT, #51719-074. The letter was addressed to his daughter, Nicole M Decker, . . . Cape Coral, FL 33914. In the letter Decker writes "You know I'd really appreciate if you ask Brenda if I could write Logan?" "O.K. & let me know how she feels about it. Ask her to write me please." "Tell Logan I said hello & that I think about them daily." Brenda and Logan are blocked contacts, signed by the Warden. The letter was sent back to the unit team as not clear and cannot be sent out. The letter was returned to Decker by staff who informed him he needed to make corrections due to him

asking his daughter to relay[] messages to a 3rd party/blocked contacts. On February 21, 2023, I reviewed the revised letter but yet again Decker writes "Please tell him Daddy misses him. You know I'd really apricate if you see if Brenda will let me write Logan? See if she will write me please. Tell Logan I said hello & that I think about them daily." "Kat (Katherine Decker, estranged wife) keeps calling you & bothering you. Tell her, that if she keeps it up that your going to file a restraining order against her." Kat (Katherine Decker is also a blocked contact). The letter was returned to Decker a 3rd time on, February 23, 2023, with minimal changes, and a 4th time on February 24, 2023, where Decker told staff he refuses to make any changes and was not going to take the letter back. Decker has made it clear he has no intention of following policy or obeying an order by a staff member. Decker continues to attempt to circumvent the mail monitoring system that has been put in place by sending letters with messages to 3rd party/individuals that are not approved/blocked on his list.

(Doc. 14-2, p. 2). The next day, Lieutenant C. Watts delivered the incident report to Decker and advised Decker of his right to remain silent. *Id*. at p. 2-4. Decker acknowledged and understood his rights regarding the discipline process and stated: "I never asked Brenda if I could write Logan. I never received a memo stating that I'm blocked from Logan, nor my wife." *Id*. at p. 4. The incident report indicates that Decker did not request staff representation or any witnesses nor did he present any evidence. Based on Lieutenant Watt's investigation, Watt's determined that the incident report was accurate, and Decker committed the prohibited act. *Id*. Thus, Lieutenant Watts referred the matter to the Unit Discipline Committee ("UDC") for further action. *Id*.

On March 8, 2023, Warden Daniel Sproul approved the UDC's request to proceed with Decker's disciplinary hearing outside of the normal time frame allowed by policy. (Doc. 14-3, p. 2). Thus, the UDC conducted a hearing on March 17, 2023, wherein Decker

stated: "all I said was tell your brother Logan, daddy loves him and misses him." (Doc. 14-2, p. 3). Due to the severity of the charges, the UDC referred the matter to DHO and recommended the loss of GCT. *Id*. Following the hearing that same day, Decker was given notice of his rights for the DHO hearing. (Doc. 14-3, p. 4). Decker also signed a form indicating he wanted a staff representative at the hearing, but he did not wish to have witnesses at the hearing. (Doc. 14-3, p. 6).

The DHO hearing was held on March 28, 2023. Decker neither admitted nor denied the charges. Appointed Staff representative B. Wrase appointed for Decker appeared and requested "copies of the Letter and the policy regarding communications and third party (PS 5265.11), which states Third party emails are contraband." During the hearing, Decker stated: "I was just writing back from my letter I received from my daughter. I have done the same thing over the phone and never been a problem. How is this any different." Decker was found guilty of BOP prohibited act 296A, Mail Abuse, Disrupt Monitoring (Attempting). *Id*. at p. 9.[3] The DHO sanctioned Decker to disallowance of 14

---

[3] In making this determination, the DHO considered the following: Recommendation for Decker's contact block for LaShawn Elston, Logan Decker and Brenda Vargo on October 5, 2022, which was approved; Recommendation for Decker's contact rejection and removal of Katherine Decker on February 16, 2021, which was approved; four documents that show that the letter at issue was returned after staff noted it was an attempt to make third party contact with a contact who had been blocked; a document that showed why the letter at issue had been returned and Decker had been given the opportunity to revise the letter; the staff representative statement that he asked for "copies of the Letter and the policy regarding communications and third party (sic) (PS 5265.11), which states Third Party emails are contraband;" Decker's statement to Lieutenant Watts that he "never asked Brenda if I could write Logan. I never received a memo stating I'm blocked from Logan, nor my wife;" Decker's statement to UDC that "all I said was tell your brother Logan, daddy loves and misses him;" Decker's statement to DHO that "I was just writing

days of GCT, loss of email privileges for 60 days, and loss of visiting privileges for 60 days. *Id*. at p. 11.

## LEGAL STANDARDS

In disciplinary hearings, prisoners have procedural due process rights, but these are not the same rights a prisoner has at trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a right to:

> (1) [A]dvance written notice of the charges against them at least twenty-four hours before the hearing;
> (2) the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals;
> (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and
> [(4)] the opportunity to be heard before an impartial decision maker.

*Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994) (internal citations omitted). However, if a witness's testimony would be "irrelevant, redundant, or unnecessary[,]" a prisoner may be denied the right to call witnesses. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Additionally, inmates do not have a constitutional right to staff representation unless the inmate is illiterate, or the issues are sufficiently complex. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). While not constitutionally mandated, inmates are provided a staff representative at a DHO hearing by BOP policy. *See* 28 C.F.R. § 541.8(d); P.S. 5270.09 CN-1, Chapter 5.

---

back from my letter that I received from my daughter. I have done the same thing over the phone and never been a problem. How is this any different;" and Decker's statement and denial of the charges against him. (Doc. 14-3, p. 10).

The findings of the discipline hearing officer must be supported by "some evidence in the record." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985). A court will overturn the decision "if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F.3d. at 1077.

When an inmate believes the BOP is computing their sentence incorrectly, they may challenge their confinement by filing a § 2241 petition. *See, e.g.*, *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (noting inmate may challenge the computation of his sentence by a § 2241 petition after first seeking relief through the BOP's administrative procedures); *see also United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992); *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992); *United States v. Dawson*, No. 13-2117, 545 Fed. Appx. 539, 541-542 (7th Cir. Nov. 15, 2013). Section 2241 petitions are the proper method for prisoners to challenge the loss of GCT because of a disciplinary hearing. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983).

However, a petitioner must exhaust his administrative remedies before filing a Section 2241 petition. This is a common-law exhaustion requirement, not a statutory one. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Court may require exhaustion before it entertains a § 2241 petition. *See, e.g.*, *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (holding that "a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking

federal habeas relief"); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992) (same with respect to sentence computation).

## DISCUSSION

The Respondent concedes that Decker exhausted his administrative remedies before filing suit. Thus, the Court turns to examine Decker's petition on the merits.

**A. DHO Hearing**

First, Decker argues that he was not afforded due process in the institutional hearing as he was never given "a memo . . . to the effect that this recommendation was ever approved [to block contact with Logan Decker and Brenda Vargo]." While Decker claims that he requested a copy of that memo and that DHO Wallace and the staff representative denied the request, Decker has not established through the record that he ever asked the DHO or the staff representative for a copy of this memorandum. In fact, the record reflects that during the DHO hearing, Decker appeared at the hearing, made a statement, and had staff representative Wrase "ask for copies of the Letter and the policy regarding communications and third party (PS 5265.11), which states Third Party emails are contraband." (Doc. 14-3, p. 8). Thus, the record is silent as to whether Decker ever asked for a memorandum regarding his blocked contacts.

Even had Decker made such a request and that request was denied, the Court finds that this memorandum would not have been helpful to Decker during his DHO hearing. First, the policy clearly prohibits 3rd party emails. Second, the DHO had more than a

sufficient basis to find that Decker was trying to communicate with prohibited contacts given the approved recommendations for contact blocks related to Decker. Moreover, Decker was aware of his contact blocks prohibiting him from contact with his son, his son's guardian, and his estranged wife. To illustrate, Decker's initial February 13, 2023, letter was returned to him several times to make revisions due to him relaying messages to a third a party/blocked contacts. Decker refused to make the changes. Thus, the Court does not see how or why this memorandum would have been exculpatory or needed to defend the charges against him.

In short, the record reveals: Decker was provided advance written notice of the charges against him before the hearing. Decker had the opportunity to call witnesses and present documentary evidence in his defense. Decker was provided a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Decker had the opportunity to be heard before an impartial decision maker. Lastly, the DHO's finding against Decker was supported by more than "some evidence" as explained above. Accordingly, Decker was given sufficient due process during his DHO hearing.

B.     **Equal Protection Clause Claim**

As to his equal protection claim, Decker merely argues that it is a violation of the equal protection clause "on the ground that an inmate can never restore loss of GCT." (Doc. 1, p. 4). Respondent argues that Decker's claim fails as he does not claim

discrimination based on being a member of a suspect class. The Court agrees with Respondent.

"To prove an equal-protection claim, [the plaintiff] must show that the program had a discriminatory effect and that the defendants were motivated by a discriminatory purpose." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). "To prove discriminatory effect, [the plaintiff] must show that he was a member of a protected class and that he was treated differently from a similarly situated member of an unprotected class." *Id.* "He may do so either by statistical analysis or by identifying a particular similarly situated member of the unprotected class who was treated differently from him." *Id.* "Discriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part because of its adverse effects upon an identifiable group." *Id.* at 907. Decker does not claim to be a member of a protected class or that he was treated differently from similarly situated members of an unprotected class. Nor does Decker allege that his treatment was based on an illegal reason. Because the record contains no evidence of discriminatory effect or of discriminatory purpose, Decker's claim that his rights under the Equal Protection Clause have been violated cannot serve as a basis for habeas relief.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Decker's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

If petitioner whishes to appeal this decision, generally he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* FED. R. APP. PROC. 4(a)(1)(B). A motion under Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. *See* FED. R. APP. PROC. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If he appeals and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $605.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008). It is not necessary for the petitioner to obtain a certificate of appealability from the disposition of his § 2241 petition. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: May 31, 2024.**

Digitally signed by Judge Sison
Date: 2024.05.31 12:52:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**